Parker, J.
This case, although very elaborately argued and with great ability, seems to me to lie within a narrow compass.
There can be no question of the right of a creditor to be substituted to any counter bonds or other securities given by the principal debtor to those bound with him as his sureties. The only case I have met with directly deciding that principle is that of Maure v. Harrison. The same principle, however, is asserted in several other cases, as one perfectly well established, and is referred to by the elementary writers as not at all questionable. The case of Wright v. Morley was one of a surety seeking to avail himself of a specific fund assigned by the principal debtor for the payment of an annuity, and sir W. Grant said “ that as the creditor is entitled to the benefit of all the securities the principal debtor has given to his sureties, the surety has full as good an equity to the benefit of all the securities the principal gives to the creditorthus reasoning from the first proposition, as a postulate requiring no support from authority. Nor has the doctrine been denied in/ the argument of the case at bar 5 .it is conceded, that if^ a surety is bound for the debt, and is indemnified by the \ principal debtor, the creditor may pursue the indemni- < ty, in exoneration of the liability of the surety. And this arises not from any notion of mutual contract between the parties, that in providing for the surety, the creditor shall be equally provided for, but from a principle of natural equity independent of contract; namely, that to prevent the surety from being first harassed ' for the debt or liability, and then turning him round to ‘ seek redress from the collateral security given by the i; principal, a court of equity will authorize, and even en-? courage, the creditor to claim through the medium oí thet surety, all the rights he has thus acquired, to be exercised for his benefit, and in discharge of his obligations. The claim of the creditor, therefore, is as much founded *222 on the well known doctrine of substitution, as the claim of the surety to stand in the place of the creditor who has received collateral security from the debtor; and, in my opinion, it has no other foundation. For when ^ principal debtor conveys property to his surety, not specifically bound to the creditor, he has no intention of giving any lien to the creditor, or to pledge the property to him for the debt; and as he has a right to dis-J pose of his property as he pleases, provided he com-(I mils no fraud, the court will not construe the instrument giving the lien beyond the intent; although it will, to effect the exoneration of innocent sureties, permit their substitution to the creditor’s rights, or his substitution to theirs. By the civil law, this principle of natural justice was carried into effect by an actual cession of the action or debt; and this serves to mark the extent and nature of this doctrine, which we have evidently derived from that source. I cannot, therefore, agree ! that the deed of July 1820, to secure the M’Cartys and VArmstrong against their indorsements, enured at once to The Cumberland Bank, as if it had been specially named as one of the cestuis que trust in the conveyance; and that the interest thus acquired existed even if the indorsers became discharged for want of notice of protest or otherwise. The obligation of Machir to the bank was not increased, or intended to be increased, by this transaction considered in itself; nor can it be construed into any new promise or acknowledgment of indebtedness on the part of the indorsers, superadded to the liability they had already incurred by their indorsement. The whole object of Machir was to secure s his indorsers against their contingent liability, by givjf ing them a specific lien on property, whilst they re-I mained at full liberty to contest the right of the credii tor to hold them responsible upon their indorsements. Considering the transaction in the light of a contract, it had this effect and no more; and if the bank has any *223 claim, it must be derived through the sureties, on the principle of substitution.
What then was the claim which the sureties had under the deed of July 1820 ? They had entered into a conditional engagement for Machir, which might bind them absolutely, in certain contingencies. If the paper they indorsed was common law paper, their undertaking was to pay after due diligence used by the creditor to obtain payment from the obligor, and a return of nulla bona, unless sufficient excuse was shewn for not pursuing the debtor: if the paper is treated as mercantile paper, (as I think it ought to be) their engagement was, that it should be duly honoured ; and if not, that they, the indorsers, would on the default of the drawer or maker, and due notice given to them of such default, pay the amount. This was the exteut and limit of their implied contract; and when the deed of July 1820 was made, it is not shewn that such contract had become an absolute and unconditional one. That deed merely recites the fact that the M'Cartys and Armstrong had become indorsers for Machir on a note for 6000 dollars in The Cumberland Banh, upon which suit had been brought against Machir, and that he was willing to secure them against all loss or damage in consequence of thus becoming his indorsers. It contains no intimation, in any part of it, that the indorsers were fixed for the debt, or that the bank had taken the proper steps to make them liable. If the deed, however, had been made for their indemnification only, and there had been no other cestuis que trust, it is very possible, that opposition to the claim of the creditor might be ineffectual; for the M' Gariys and Armstrong would have no interest to make it, and the principal debtor could scarcely object, in a court of equity, to the application of any portion of his property in discharge of a just debt. On that point, it is not necessary to give an opinion; for here, the deed was made for the indemnification of other sureties of Machir, who have been made respon *224 sible for more than the whole trust subiect has been sold for; and they, I think, have a right to raise the question of the title of other sureties to participate in the fund. The deed was unquestionably made for the the sureties, and no one of them was to have priority over the other. It was made to protect them against loss or damage .incurred or threatened, arising out of liability; and it was the evident intention of the grantor, that all should be completely secured; and, as a consequence, that if some were discharged from their obligations or were never bound, the benefit designed should enure to the rest, to the full extent of their engagements for him. This would be quite plain if the creditor had not interposed between them ; and if he claims by substitution, and his right is subordinate to that of the sureties and derived through them (as I think it is) he can stand in no better situation than if a surety were applying to the court for protection ■against loss or danger. In such case, the other sureties, being directly interested in throwing the burden off the fund, for their own complete exoneration, would have a right to require the applicant to make out a case of liability for the principal debtor, bringing him within the terms and intention of the deed of trust. The bill in this case does not charge, that the M’Cartys and Armstrong were ever liable for the debt. It does not even charge, that a demand had ever been made upon them for it. It makes, indeed, the proceedings in Carthrae’s. suit a part of the record in this case; and in their answers to Carthrae’s bill, the M’Cartys and Armstrong do state that a suit had been brought against them ; but they also allege, that they are advised the bank cannot recover against them in any of the courts of this state, because it is a corporation created in another state, and in consequence of the great indulgenPe extended to Machir by the bank; yet they are unwilling to relinquish any right under the deed of trust until they are finally exonerated. Carthrae also alleges that *225 the M’Cartys and Armstrong are released; and shortly after their answers were filed, the bank suffered non-suits in the actions it had brought against them. Suppose, then, the M’Cartys and Armstrong were plaintiffs asking for participation in this fund, and stating all the facts which appear in the bill filed by the bank, and in their own answers to Carthrae’s bill, together with the additional fact that in May 1823, three years before the commencement of their suit, the bank had abandoned its claim against them; and the other sureties had resisted that prayer'of their bill: would the court have been justified in taking away from such other sureties, a portion of the fund already insufficient to indemnify them for actual losses sustained, and in decreeing its payment to the M’Cartys and Armstrong, or impounding it for their benefit? I think not; and, therefore, I think the decree is erroneous in directing the payment to a plaintiff standing in their place. It is the more objectionable, because, in my opinion, the proceedings in the cause, as well as the absence of any proof, or even of any allegation, that the steps necessary to charge the indorsers had been taken by the bank, authorize us to conclude, that they never were liable for this debt.
It is not necessary to notice, particularly, the numerous cases cited, illustrative of the doctrine of subrogation, since all of them are cases of rights and remedies actually existing; and the expressions sometimes used by the judges to explain the right of a creditor or surety to resort to a lien, as that “it is the property of the principal debtor pledged for the debt” (though not to the creditor or surety), must be taken in reference to the subject matter under discussion, and to the facts appearing in the case. Thus considered, there is nothing in the case of M’Mahon v. Fawcett, or in any other referred to, which is inconsistent with this opinion. No more is meant, than that if the property is pledged to *226 either the creditor or the surety, though not to the person seeking to charge it, it may be reached by substitution in a court of equity, without regard to the intention of the contracting parties. But still the party who seeks to be subrogated, must shew that the person, to whom the property is pledged or any other counter security is given, has or would have had a right, in the contemplation of a court of equity, to claim the benefit of the indemnification, by being one liable for the debt or obligation, or entitled to charge the fund pledged; and that the plaintiff has a subsisting equity to enforce the lien, or the counter security, in the same manner as if there were an actual cession of the action.
The result of this view of the case is, that the decree must be reversed, and the bill dismissed.